**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (SBN : 328243)
pamela@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT BARGAR, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**SYNAPSE GROUP, INC. d/b/a MAGSFORMILES and MAGSFORPOINTS**<br><br>**Defendant.** | **Case No.:**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCITVE RELIEF FOR VIOLATIONS OF:**<br><br>1) **CALIFORNIA CONSUMER LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, *ET SEQ.*;**<br><br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*;**<br><br>3) **CALIFORNIA'S FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*;**<br><br>4) **BREACH OF CONTRACT;**<br><br>5) **UNJUST ENRICHMENT.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Bargar ("Plaintiff") brings this complaint, by and through his attorneys and on behalf of all others similarly situated, against defendant Synapse Group, Inc. d/b/a MagsforMiles and MagsforPoints ("Synapse" or "Defendant") and allege upon information and belief as follows:

## INTRODUCTION

1.     Magazines for Miles, commonly referred to as MagsforMiles ("MFM"), is a program run by Synapse wherein frequent flyer members of certain airlines are invited to redeem their unused, orphan, or expiring miles for popular magazines.

2.     Likewise, Magazine for Points, commonly referred to as MagsforPoints ("MFP") is a program run by Synapse wherein frequent flyer members of certain airlines are invited to redeem their unused, orphan, or expiring miles ("Miles") for popular magazines.

3.     Synapse has partnered with Alaska airlines, Delta airlines, Frontier airlines and United airlines as well as certain magazine publishers to offer this redemption option for the Miles.

4.     In exchange for their Miles, Synapse claims that MFM and MFP members may select the magazine *print* publication of his or her choice from certain categories including entertainment, business, sports and travel.

5.     As Plaintiff learned, however, these claims by Synapse are false because Synapse unilaterally revoked his ability to receive his chosen print publications after redeeming his Miles.

6.     In a classic bait and switch marketing ploy, Synapse lured Plaintiff into redeeming his Miles for certain print magazine publications and then forced Plaintiff to choose a *digital* publication for magazines *other than* his chosen publication rather than refunding him the Miles or providing other compensation.

7.     Upon good information and belief, Synapse dupes thousands of consumers into redeeming their Miles by falsely advertising that such consumers would receive their desired print magazine publication when they redeemed their Miles, even

though Synapse unilaterally terminates the print subscription and foists upon consumers a small selection of other magazines offered solely in a digital format.

8.  Through its deceptive practices, Synapse has reaped substantial unjustified profits at the expense of millions of consumers. Plaintiff seeks to stop these deceptive practices.

9.  Unless otherwise indicated, the use of Defendant's names in this Complaint include all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendant, respectively.

## JURISDICTION AND VENUE

10. The Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (i) there is minimal diversity; (ii) Defendant is not a government entity against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative class; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because: (1) Defendant transacts business within this judicial district and because Plaintiff was, and is, a resident of Laguna Niguel, California, at all times relevant to these claims such that a substantial part of the events giving rise to Plaintiff's causes of action against Defendant arise in this judicial district; and (2) Defendant's contacts with this District are sufficient to subject them to personal jurisdiction within this judicial district.

## PARTIES

12. Plaintiff Bargar is, and at all times mentioned herein a natural person, individual citizen and resident of County of Orange, California, in this judicial district.

13. Upon information and belief, Synapse is a foreign corporation with its principal place of business located at 225 High Ridge Road, East Building Stamford, CT 06905.

## PLAINTIFF'S FACTUAL ALLEGATIONS

14. MileagePlus is the loyalty program of United Airlines that offers rewards to passengers traveling on certain types of tickets.

15. Plaintiff is a member of United's MileagePlus program.

16. Plaintiff received advertisements from MFM and MFP offering to exchange his United airline miles for certain print magazine subscriptions.

17. Relying on Defendant's advertisement, Plaintiff agreed to exchange a certain amount of miles from his MileagePlus account for the *print* publications of: (i) Eating Well magazine; (ii) Entertainment Weekly magazine; and (iii) InStyle magazine (the "Print Publications").

18. After receiving several issues of the Print Publications, however, Plaintiff received three postcards from Defendant in the spring of 2022 indicating that he could no longer receive these Print Publications even though he redeemed his Miles months earlier. Attached hereto as **Exhibit A** are true and accurate copies of the postcards.

19. In these postcards, Defendant claimed that these publications were no longer available. *See* **Exhibit A**.

20. Rather than provide Plaintiff with a refund of his miles or monetary compensation, Defendant gave Plaintiff the *sole* option of picking a *digital* publication of *different* magazines from a small list of publications.

21. Needless to say, Plaintiff was quite annoyed because he did not want digital publications, especially magazines that he had no interest in.

22. Indeed, Plaintiff did not want any of the other magazines that were offered from the small list of publications.

23. To put it mildly, Plaintiff was shocked as this directly contradicted

Defendant's advertisement.

24.     Based on the foregoing, Synapse has reaped substantial unjustified profits at the expense of thousands if not millions of consumers.  While luring consumers into redeeming airline miles in exchange for certain print publications in its advertisements, Synapse refuses to honor its promises and unilaterally terminates the print subscription and foists upon consumers a small selection of ***other*** magazines offered solely in a ***digital*** format.

25.     Plaintiff brings this action to stop such deceptive and unfair practices.

## CLASS ALLEGATIONS

26.     Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated. Plaintiff is a member of and seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) defined as:

> All consumers within the United States that redeemed airline frequent flier miles with Synapse for any print publication that was later discontinued leaving the consumers with only a choice of a publication that they did not choose with no option for a refund of their frequent flier miles.

27.     Additionally, Plaintiff is a member of and seeks to represent a California Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), defined as:

> All consumers within California that redeemed airline frequent flier miles with Synapse for any print publication that was later discontinued leaving the consumers with only a choice of a publication that they did not choose with no option for a refund of their frequent flier miles.

28.     Excluded from the Class and Sub-Class are Defendant's officers, directors, and employees; any entity in which Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of

Defendant. Further excluded from the Class and Sub-Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

29.     Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

30.     <u>Numerosity</u>: The members of the Class and Sub-Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class and Sub-Class consists of thousands of individuals nationwide and also within California.

31.     <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

      a.     The nature, scope, and operations of the wrongful practices of Defendant;

      b.     Whether Defendant negligently or intentionally misrepresented and/or omitted the fact that Plaintiff, Class and Sub-Class Members would not actually receive the print publications of their chosen magazines;

      c.     Whether Defendant knew or should have known that its business practices were unfair, fraudulent, and/or unlawful;

      d.     Whether Defendant's conduct amounts to false advertising;

      e.     Whether Defendant breached its contract with Plaintiff, the Class and Sub-Class Members by failing to refund the redeemed miles for their discontinued print publications;

      f.     Whether Defendant breached its contract with Plaintiff, the Class and Sub-Class Members by failing to compensate consumers for their discontinued print publications;

g.   Whether Plaintiff, Class and Sub-Class Members were deceived into redeeming their miles based on Defendant's promise that they would receive print publications of their chosen magazines;

h.   Whether the conduct of Defendant violated the CLRA;

i.   Whether the conduct of Defendant was "unlawful" as that term is defined in the UCL;

j.   Whether the conduct of Defendant was "unfair" as that term is defined in the UCL;

k.   Whether the conduct of Defendant violated the FAL;

l.   Whether Defendant was unjustly enriched by its failure to provide Plaintiff and Class members with a refund;

m.   Whether Plaintiff and Class members suffered monetary damages as a result of Defendant's conduct and, if so, the appropriate amount of damages; and

n.   Whether Plaintiff, Class and Sub-Class Members are entitled to injunctive relief, including public injunctive relief.

32.   <u>Typicality</u>: Plaintiff's claims are typical of those of the Class and Sub-Class. Plaintiff and all members of the Classes have been injured by the same wrongful practices of Defendant. Plaintiff's claims arise from the same course of conduct that gave rise to the claims of the Classes and are based on the same legal theories.

33.   <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of Class and Sub-Class Members. Plaintiff's Counsel are competent and experienced in litigating consumer class actions. Plaintiff has retained counsel experienced in consumer protection law, including complex class action litigation.  Plaintiff has no adverse or antagonistic interests to those of the Classes and will fairly and adequately protect the interests of the Classes.  Plaintiff's attorneys are aware of no interests adverse or antagonistic to those of Plaintiff and the proposed Classes.

34.     Predominance: Defendant has engaged in a common course of conduct toward Plaintiff, Class Members, and Sub-Class Members, in that Plaintiff's, Class and Sub-Class Members were induced to redeem their airline miles in exchange for their chosen print publications. The common issues arising from Defendant's conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

35.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

36.     Defendant has acted on grounds that apply generally to the Class and Sub-Class, so that class certification is appropriate.

37.     Notice: Plaintiff anticipates providing direct notice to the Class and Sub-Class for purposes of class certification, via U.S. Mail and/or email, based upon Defendant's and/or Defendant's agents' records.

## FIRST CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act ("CLRA")

### (Cal. Civ. Code § 1750, *et seq.*)

### (On Behalf of Plaintiff and the Sub-Class)

38.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

39.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendant.

40.      The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer . . .." Cal. Civ. Code § 1770(a).

41.     Defendant is a "[p]erson," as that term is defined in Cal. Civ. Code § 1761(c), because it is a "corporation" or "other group, however organized."

42.     Plaintiff and putative Sub-Class Members are all "[c]onsumer[s]," as that term is defined in Cal. Civ. Code § 1761(d), because they are "individual[s] who seek[] or acquire[], by purchase or lease, any goods or services for personal, family, or household purposes."

43.     Defendant offered "[s]ervices," as that term is defined by Cal. Civ. Code § 1761(b), because it offered "services for other than a commercial or business use, including services furnished in connection with the sale . . . of goods" when it offered Plaintiff and Sub-Class members print publications of certain magazines in exchange for their airline frequent flier miles.

44.     Plaintiff and Sub-Class Members engaged in "[t]ransactions" with Defendant, as that term is defined in Cal. Civ. Code § 1761(e), because there was "an agreement between [Plaintiff and Sub-Class Members] and [Defendant]," whereby Defendant agreed to provide Plaintiff and Sub-Class Members with their desired magazines as a print publication.

45. Defendant violated the CLRA, as it relates to Plaintiff and Sub-Class Members by (i) representing that its services had characteristics, uses, benefits, and/or quantities that they do not have, Cal. Civ. Code § 1770(a)(5); (ii) advertising services with the intent not to sell them as advertised, Cal. Civ. Code § 1770(a)(9); and (iii) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, Cal. Civ. Code § 1770(a)(14).

46. Particularly, Defendant represented that Plaintiff and Sub-Class Members would receive certain magazines as a print publication when, in fact, Plaintiff and Sub-Class Members were forced to choose a *digital* publication of a different magazine after they redeemed their Miles.

47. Plaintiff and Sub-Class Members all relied on Defendant's representation that they would receive their chosen magazine as a print publication when they redeemed their Miles.

48. Upon information and belief, Defendant disseminated several advertisements on its website, radio, television, and print media misrepresenting to Plaintiff and Sub-Class Members that they would receive their chosen magazine in print publication.

49. Upon information and belief, Defendant never intended to provide Plaintiff Sub-Class Members with their chosen magazine in print publication, and Defendant violated the CLRA with the awareness of the fact that the conduct alleged was wrongful under California law, and Defendant was motivated solely by its own self-interest, monetary gain, and increased profits.

50. Defendant knew, or reasonably should have known, that harm was likely to result to Plaintiff and Sub-Class. Defendant engaged in such unfair and deceptive conduct notwithstanding such knowledge.

51. Plaintiff and Sub-Class members all suffered actual monetary harm as a direct and proximate result of Defendant's CLRA violations, as they were forced to choose

a digital publication of a different magazine than what Defendant had promised that they would receive in exchange for their Miles.

52.     Pursuant to Cal. Civ. Code § 1782(a), on or about February 1, 2023, Plaintiff's counsel notified Defendant in writing particular violations of § 1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Should Defendant fail, within 30 days of receipt of Plaintiff's demand, to provide Plaintiff and Sub-Class Members with an appropriate correction, repair, replacement, or other remedy, Plaintiff intends to amend this complaint to allege damages and attorneys' fees and costs.  At present, under the CLRA, this complaint seeks injunctive relief only.

53.     Plaintiff and Sub-Class Members are entitled to injunctive relief, including public injunctive relief prohibiting such conduct in the future.

54.     Attached hereto as **Exhibit B** is a sworn declaration from Plaintiff Bargar pursuant to California Civil Code § 1780(d).

## SECOND CAUSE OF ACTION
## CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"),
## CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### (On Behalf of Plaintiff and the Sub-Class)

55.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

56.     The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

57.     The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

## *"Unfair" Prong*

58.     A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

59.     Defendant's actions constitute "unfair" business practices because, as alleged above, Defendant engaged in a misleading and deceptive practice of intentionally misrepresenting and/or omitting the fact from consumers that they would receive a different magazine in a different format than what Defendant has advertised.

60.     This is done to trick consumers into redeeming their miles for certain publications owned by Defendant, thus allowing Defendant to increase its profits at the expense of consumers.

61.     Through their bait and switch practices, Defendant retains hundreds if not thousands of dollars which should have, in all fairness, been permanently credited to Plaintiff, the Class and the California Sub-Class Members.

62.     Defendant's acts and practices offend an established public policy of transparency when it comes to advertising goods and services, and are immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

63.     The harm to Plaintiff and Class Members grossly outweighs the utility of Defendant's practices.  Indeed, Plaintiff alleges that there is no utility of Defendant's conduct that justifies the practices alleged with specificity herein.

## *"Unlawful" Prong*

64.     A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

65.     Defendant's acts and practices alleged above constitute unlawful business acts or practices as they have violated the plain language of the CLRA and the FAL as described herein.

66.     The violation of any law constitutes as "unlawful" business practice under the UCL.

67.     These acts and practices alleged were intended to or did result in violations of the CLRA.

68.     Defendant's practices, as set forth above, have misled Plaintiff, Sub-Class Members, and the public in the past and will continue to mislead them in the future. Consequently, the practices of Defendant constitute unfair and unlawful business practices within the meaning of the UCL.

69.     Pursuant to the UCL, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief and order Defendant to cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff and the Class of all the revenues associated with this unfair and unlawful competition, or such portion of said revenues as the Court may find applicable.

**THIRD CAUSE OF ACTION**

**Violation of California's False Advertising Law ("FAL")**

**Cal. Bus. & Prof. Code §§ 17500, et seq.**

**(On Behalf of Plaintiff and the Sub-Class)**

70.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs.

71.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with intent … to dispose of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means

whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

72.     Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

73.     Defendant knew or should have known that their misrepresentations and omissions were false, deceptive, and misleading.

74.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Sub-Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their practice of misrepresenting their magazine subscription service.

75.     Further, Plaintiff and the members of the Sub-Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

76.     Additionally, Plaintiff and the members of the Sub-Class seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**FOURTH CAUSE OF ACTION**

**Breach of Contract**

**(On Behalf of Plaintiff, the Class and the Sub-Class)**

77.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs.

78.     Plaintiff, Class Members, Sub-Class Members entered a contract with Defendant, whereby Defendant offered them certain magazines in print publication format in exchange for a certain amount of Miles from Plaintiff, Class Members and Sub-Class Members.

79.     Pursuant to the terms of the contract, Plaintiff, Class Members and Sub-Class Members all redeemed the Miles. Thus, Plaintiff, Class Members and Sub-Class

Members all performed all, or substantially all, of the significant things that the contract required them to do.

80. However, after Plaintiff, Class Members and Sub-Class Members satisfied their obligations under the contract, Defendant failed to provide Plaintiff, Class Members and Sub-Class Members with their chosen magazine in print publication format.

81. As a direct and proximate result of Defendant's material failure to perform under contract, Plaintiff, Class Members and Sub-Class Members were all individually and collectively harmed, as Plaintiff, Class Members and Sub-Class Members were not afforded the promised chosen magazine as print publication during the Class Period.

82. Therefore, Plaintiff, Class Members and Sub-Class Members are entitled to actual damages and/or restitution damages.

**FOURTH CAUSE OF ACTION**

**Unjust Enrichment**

**(On Behalf of Plaintiff and the Sub-Class)**

83. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

84. Plaintiff brings this claim individually and on behalf of the members of the proposed California Sub-Class against Defendant, in the alternative to the breach of contract claim.

85. Under California law, the elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

86. Plaintiff and Sub-Class Members conferred non-gratuitous benefits upon Defendant by exchanging miles for certain magazines in a certain format, which is different than what Defendant had advertised and continued to advertise.

87. Plaintiff and Sub-Class Members allege that Defendant owes them money for the conduct alleged herein.

88.     An undue advantage was taken from Plaintiff's and Sub-Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right. Defendant is therefore indebted to Plaintiff and Sub-Class Members in a sum certain, specifically the miles each of them redeemed.

89.     Defendant is therefore indebted to Plaintiff and Sub-Class Members in a sum certain for money had and received by Defendant, which Defendant in equity and good conscience should not retain.

90.     Defendant is therefore liable to Plaintiff and Sub-Class Members in the amount unjustly enriched.

91.     Defendant's retention of any benefit collected directly and indirectly from Plaintiff and Sub-Class Members violates principles of justice, equity, and good conscience. As a result, Defendant has been and continues to be unjustly enriched.

92.     Plaintiff and Sub-Class Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiff and Sub-Class Members the benefits it has unjustly obtained.

93.     Defendant accepted or retained such benefits with knowledge that the rights of Plaintiff and Sub-Class Members were being violated for financial gain. Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiff and Sub-Class Members, which retention under these circumstances is unjust and inequitable.

94.     As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiff and Sub-Class Members, Plaintiff, Class Members and Sub-Class Members have all suffered concrete harm and injury.

95.     Defendant's retention of the non-gratuitous benefits on them by Plaintiff and Sub-Class Members would be unjust and inequitable.

96.     Plaintiff and Sub-Class Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

97.     Plaintiff and Sub-Class Members request the Court enter an order awarding them restitution, rescission, and or/damages, and that they are entitled to recover their reasonable attorneys' fees.

98.     Plaintiff and Sub-Class Members therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendant as follows:

- Class certification of this action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- An award of actual damages, in an amount to be determined at trial;
- Injunctive and other equitable relief against Defendant as necessary to protect the interests of Plaintiff and other Class Members, and an order prohibiting Defendant from engaging in unlawful and/or unfair acts described above, including public injunctive relief;
- An order of restitution from Defendant;
- An order declaring Defendant's conduct as unlawful;
- Costs of Suit;
- Pre- and post-judgment interest;
- An award of reasonable attorneys' fees; and

- Any other relief the Court may deem just and proper, including interest.

## DEMAND FOR TRIAL BY JURY

119.  Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: February 1, 2023

Respectfully submitted,
**KAZEROUNI LAW GROUP, APC**

By:  /s/ Abbas Kazerounian
Abbas Kazerounian, Esq.
*ATTORNEYS FOR PLAINTIFF*

# Exhibit A

**MagsforMiles and MagsforPoints**
C/O Processing Center
PO Box 30468
Salt Lake City, UT 84130



Dear Robert,

Your subscription to InStyle is no longer available because the magazine has ceased publication.

We invite you to select a 1-year subscription to the digital title of your choice at no additional cost from a list of available selections. Simply go to **get.emags.com/mfm** and enter the promo code below by June 26, 2022.

**Here's your Code:**

4CCA

Sincerely,
The MagsforMiles and MagsforPoints Teams

PRESORTED
FIRST-CLASS
U.S. Postage
**PAID**
Permit No. 6
Hartford, CT

ELECTRONIC SERVICE REQUESTED

Robert Bargar



**MagsforMiles and MagsforPoints**
C/O Processing Center
PO Box 30468
Salt Lake City, UT 84130

PRESORTED
FIRST-CLASS
U.S. Postage
**PAID**
Permit No. 6
Hartford, CT

Dear Robert,

**Here's your Code:**

███ **83BB**

Your subscription to EatingWell is no longer available because the magazine has ceased publication.

We invite you to select a 1-year subscription to the digital title of your choice at no additional cost from a list of available selections. Simply go to **get.emags.com/mfm** and enter the promo code below by June 26, 2022.

Sincerely,
The MagsforMiles and MagsforPoints Teams

ELECTRONIC SERVICE REQUESTED

Robert Bargar

**MagsforMiles and MagsforPoints**
C/O Processing Center
PO Box 30468
Salt Lake City, UT 84130



Dear Robert,

· Your subscription to Entertainment Weekly is no longer available because the magazine has ceased publication.

We invite you to select a 1-year subscription to the digital title of your choice at no additional cost from a list of available selections. Simply go to **get.emags.com/mfm** and enter the promo code below by June 26, 2022.

**Here's your Code:**

**A4A9**

Sincerely,
The MagsforMiles and MagsforPoints Teams

Robert Bargar

PRESORTED
FIRST-CLASS
U.S. Postage
**PAID**
Permit No. 6
Hartford, CT

ELECTRONIC SERVICE REQUESTED

# Exhibit B

# DECLARATION OF ROBERT BARGAR

**I, ROBERT BARGAR, DECLARE:**

1. In 2022, I agreed to exchange a certain amount of miles from my United MileagePlus account for certain print publications offered by defendant Synapse Group, Inc. d/b/a MagsforMiles and MagsforPoints ("Synapse").

2. When I entered into this arrangement with Synapse, I was in the State of California, where I also reside.

3. It is my understanding that Synapse does business throughout the State of California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct, and that this declaration was executed on February ____, 2023.



By:_____

Robert Bargar

KAZEROUNI LAW GROUP, APC