JOHN S. PURCELL (SBN 158969)
john.purcell@afslaw.com
SARA T. SCHNEIDER (SBN 298103)
sara.schneider@afslaw.com
JESSICA B. DO (SBN 317517)
jessica.do@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Defendant
SYNAPSE GROUP, INC. d/b/a
MAGSFORMILES AND MAGSFORPOINTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROBERT BARGAR, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

v.

SYNAPSE GROUP, INC. d/b/a MAGSFORMILES and MAGSFORPOINTS,

Defendant.

Case No. 8:23-CV-00198-CJC-JDE

Honorable Cormac J. Carney

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE**

***[Filed concurrently with Notice of Motion and Motion to Transfer Venue; Declaration of Tracy Dart; and [Proposed Order]***

Date: July 10, 2023
Time: 1:30 pm
Courtroom: 9B

Date Action Filed: February 1, 2023
FAC Filed: March 16, 2023

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

8:23-CV-00198-CJC-JDE

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES .... 5

I. INTRODUCTION .... 5

II. RELEVANT FACTUAL BACKGROUND .... 6

III. ARGUMENT .... 9

- A. LEGAL STANDARD .... 9
- B. THE FORUM-SELECTION CLAUSE IS PART OF A VALID AGREEMENT ENCOMPASSING PLAINTIFF'S CLAIMS FOR RELIEF .... 9
  - 1. PLAINTIFF HAD, AT MINIMUM, CONSTRUCTIVE NOTICE OF THE FORUM-SELECTION CLAUSE .... 9
  - 2. PLAINTIFF ADMITS THAT HE ENTERED INTO THE RELEVANT CONTRACT WITH SYNAPSE .... 12
  - 3. THE FORUM-SELECTION CLAUSE IS REASONABLE .... 12
  - 4. THE FORUM-SELECTION CLAUSE APPLIES TO PLAINTIFF'S CLAIMS .... 15
- C. PUBLIC-INTEREST FACTORS FAVOR ENFORCEMENT .... 16

IV. CONCLUSION .... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) .......... 12

*Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320 (9th Cir. 1996) .......... 12

*Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 571 U.S. 49 (2013) .......... *passim*

*Bennett v. Hosting.com, Inc.*, No. C-08-3792 SC, 2008 WL 4951020 (N.D. Cal. Nov. 18, 2008) .......... 14

*Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021 (N.D. Cal. 2020) .......... 9

*Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216 (9th Cir. 2011) .......... 17

*Carnival Cruise Lines, Inc.*, 499 U.S. at 593 .......... 13

*In re CytRx Corp. Stockholder Derivative Litig.*, No. 14-cv-6414-GHK, 2015 WL 9871275 (C.D. Cal. Oct. 30, 2015) .......... 9, 16

*E. & J. Gallo Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115 (E.D. Cal. 2006) .......... 14

*Gates v. Learjet Corp. v. Jensen*, 743 F.2d 1325 (9th Cir.1984) .......... 17

*Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689,703 (2009) .......... 17

*Int'l Chem. Supplies (ICS), Inc. v. Restoration Energy, LLC*, 2015 WL 4602664 (E.D.Cal. July 29, 2015) .......... 17

*Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559 (9th Cir. 2014) .......... 11

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .......... 12, 13

*Mazzola v. Roomster Corp.*, No. 10-CV-5954-AHM-JCGX, 2010 WL 4916610 (C.D. Cal. Nov. 30, 2010) .......... 13

*Meras Engineering, Inc. v. CH2O, Inc.*, No. 11-cv-0389, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) .......... 15

*Moretti v. Hertz Corp.*, No. 13-cv-02972-JSW, 2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .......... 15, 16, 17

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004)) .......... 14

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) .......... 9, 10, 11

*Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir. 1982) .......... 15

*Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir.1998) .......... 13

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) .......... 13

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) .......... 9

**Statutes**

28 U.S.C. § 1404 .......... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Robert Bargar agreed to redeem surplus airline miles in exchange for magazine subscriptions pursuant to reward programs administered by Defendant Synapse Group, Inc. d/b/a MagsForMiles and MagsForPoints ("Synapse"). Plaintiff claims that Synapse breached this agreement by offering substitute digital magazine subscriptions when the print magazine titles he had selected became unavailable. He asserts class claims for breach of contract, unjust enrichment, and violation of various California consumer statutes.

Plaintiff's election to file suit in this Court runs afoul of the forum-selection clause incorporated into the agreement with Synapse on which he is suing. The relevant provision provides: "Any disputes arising under these Program Details and Terms of Use will be governed by New York law. You hereby consent to the exclusive jurisdiction of the state and federal courts located in New York County, New York for any such purposes." The broad scope of this provision encompasses Plaintiff's claims, all of which are premised on Synapse's alleged failure to fulfill its contractual obligations to him.

Plaintiff cannot avoid enforcement of the forum-selection clause. First, he was, at minimum, on constructive notice of the Program and Delivery Details that incorporate the forum-selection clause because his claims presume that the specifics of the program's delivery of magazines were material to the transaction. As such, a reasonably prudent consumer in his position would have clicked on the conspicuous Program and Delivery Details link on the webpages that he visited no less than eighteen times to place orders during the relevant time frame. Second, his reliance on the delivery details as material terms further serves as a judicial admission that the Program and Delivery Details (including the forum-selection clause) were part

of the enforceable agreement between him and Synapse that forms the basis of his breach of contract claim.

The Supreme Court has made clear that valid forum-selection clauses such as this one must be enforced absent extraordinary circumstances. *See Atlantic Marine Construction Co. v. U.S. District Court for Western District of Texas*, 571 U.S. 49 (2013). Because no such circumstances are presented here, this Court should grant Synapse's motion and transfer this case to the United States District Court for the Southern District of New York.

## II. RELEVANT FACTUAL BACKGROUND

Synapse is a leading marketer of magazine subscriptions in the United States. Declaration of Tracy Dart in support of Defendant's Motion to Transfer Venue (the "Dart Decl."), ¶ 3. Synapse has a principal place of business in Connecticut. First Amended Class Action Complaint for Damages and Injunctive Relief ("FAC") [Dkt. 12], ¶ 13. Plaintiff is a citizen of California and resident of Orange County. FAC, ¶ 12.

Synapse operates customized marketing programs spanning multiple channels, including retailers, airlines, direct response and internet companies. Dart Decl., ¶ 3. Synapse's airline partners include, among others, United Airlines, Inc. ("United"). *Id*. Synapse offers its airline partners, such as United, two customized marketing programs, commonly referred to as MagsForMiles ("MFM") and MagsForPoints ("MFP"). *Id*., ¶ 4. MFM invites frequent flyer members to redeem their unused, orphan, or expiring miles for popular magazines. *Id*.; FAC, ¶ 1. Similarly, MFP invites rewards program members to redeem their unused, orphan or expiring points for popular magazines. *Id*.; FAC, ¶ 2.

Plaintiff is a member of United's MileagePlus program. FAC, ¶ 15. Plaintiff received advertisements from MFM and MFP offering to exchange his United miles and/or points for magazine subscriptions. *Id*., ¶ 16. Beginning on September

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

8:23-CV-00198-CJC-JDE - 6 - MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE

4, 2020, and continuing through August 12, 2021, Plaintiff placed a number of orders through his United MileagePlus account for subscriptions to various print publications, in particular *Eating Well*, *Entertainment Weekly* and *InStyle* magazines (together, the "Print Publications"). *Id.*, ¶ 17; Dart Decl., ¶ 5. Synapse's records indicate Plaintiff placed his orders for the Print Publications online. Dart Decl., ¶ 6; **Ex. A**.

In order to place the online orders for the Print Publications, Plaintiff navigated through a series of webpages, including the initial offer from Synapse, a subsequent payment screen, and an order confirmation page with additional offers. Dart Decl., ¶ 6; **Ex. B**. As depicted in the order flow attached as **Exhibit B**, Plaintiff was first presented with an initial offer page prompting him to "Use your United MileagePlus miles now" and presenting him with a number of publications he could select and add to his cart based on available airline miles. Dart Decl., ¶ 6; **Ex. B** at 2. Once finished adding publications to his cart, Plaintiff then scrolled down to the "Checkout" button at the bottom of the landing page. Immediately below the "Checkout" button are four hyperlinks, including Synapse's Program and Delivery Details. Clicking the "Checkout" button to proceed to checkout took Plaintiff to the customer checkout page. *Id.* Again, the link to Program and Delivery Details appears just below the "Place Order" button on the checkout page. *Id.*, ¶ 6; **Ex. B** at 5, 6-8. Plaintiff had to proceed through the above steps in order to place his orders for the Print Publications. *Id.*, ¶ 6. At a minimum, the website presented the Program and Delivery Details link to Plaintiff twice each time he placed an order. *Id.*, ¶ 7. Synapse's records reflect that Plaintiff placed nine orders between 2020 and 2021 and, therefore, viewed the link to the Program and Delivery Details a minimum of eighteen times. *Id.*

Clicking on the hyperlink to Synapse's Program and Delivery Details sends the customer to Synapse's Program Details webpage. *Id.*, ¶ 8; **Ex. B** at 10. On that

page, in a section entitled "**Website Information**," Synapse states that "[a]s a user of MagsforMiles.com (the "Site") and its services, you agree to be bound and abide by the Terms of Use that are explained here." *Id*.

The Program Details page also contains a section entitled "**Governing Law and Jurisdiction**," which states: "Any disputes arising under these Program Details and Terms of Use will be governed by New York law without reference to conflict of law principles. You hereby consent to the exclusive jurisdiction of the state and federal courts located in New York County, New York for any such purposes." *Id*., ¶ 9.

Plaintiff alleges that, after receiving several issues of the Print Publications, he received three postcards from Synapse in the Spring of 2022 notifying him that he would no longer receive these Print Publications, as they were no longer available, and providing Plaintiff with the option to select replacements from a list of different digital magazines. FAC, ¶¶ 18-20.

Plaintiff responded by filing this putative nationwide class action on February 1, 2023,[1] asserting claims against Synapse for breach of contract, unjust enrichment, and violation of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"). *See* Compl. [Dkt. 1]. On March 16, 2023, Plaintiff filed his FAC, adding claims for compensatory and punitive damages pursuant to the CLRA. [Dkt. 12].

Synapse now seeks to enforce the forum-selection provision contained in the Program Details and to transfer this action to the Southern District of New York per the parties' agreement.

//

//

[1] Plaintiff placed his tenth order with Synapse and redeemed his United miles for another subscription on January 16, 2023—just weeks before filing the instant lawsuit claiming, *inter alia*, that Synapse defrauded him. Dart Decl., ¶ 5.

## III. ARGUMENT
### A. Legal Standard

A forum-selection clause in favor of another district court is enforced by a motion to transfer venue pursuant to 28 U.S.C. section 1404(a), which is the "codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Const. Co.*, 571 U.S. at 59-60. In deciding such a motion, a court must first "determine whether the forum-selection clause is valid" and then "evaluate the *forum non conveniens* factors as modified by *Atlantic Marine*." *In re CytRx Corp. Stockholder Derivative Litig.*, No. 14-cv-6414-GHK, 2015 WL 9871275, at *2 (C.D. Cal. Oct. 30, 2015).[2] Importantly, a "forum-selection clause should be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). Motions to transfer pursuant to such a clause should be granted "unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52.

### B. The Forum-Selection Clause Is Part of a Valid Agreement Encompassing Plaintiff's Claims for Relief

#### 1. Plaintiff Had, at Minimum, Constructive Notice of the Forum-Selection Clause

Because Plaintiff did not have to affirmatively click a button assenting to the terms in the Program and Delivery Details, the parties' agreement is considered "browsewrap." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014). "[T]he determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions." *Id.* If Plaintiff had actual notice, the inquiry ends there. If Plaintiff denies actual notice, the Court then considers "whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract." *Id.* at 1177.

---

[2] The moving party must submit a declaration to establish facts in support of these factors. *See e.g., Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020).

This analysis "depends on the design and content of the website and the agreement's webpage." *Id.*

Here, Plaintiff had, at minimum, constructive knowledge of the Program Details containing the forum-selection clause mandating resolution of any disputes in courts located in New York County, New York. As described above, in order to place the orders for the subscriptions at issue in this case, Plaintiff navigated through a series of webpages. First, Plaintiff was presented with an initial offer page displaying a number of publications Plaintiff could select and add to his cart based on available airline miles. Dart Decl., ¶ 6; **Ex. B** at 2. After adding the desired subscriptions to his cart, Plaintiff was required to scroll to the bottom of the page and click the "Checkout" button in order to proceed to checkout. *Id*. Immediately below that "Checkout" button are several prominent hyperlinks, including Synapse's Program and Delivery Details hyperlink. The same links are also conspicuously displayed immediately below the "Place Order" button on the customer checkout page. *Id*., ¶ 6; **Ex. B** at 5, 6-8.

As noted above, clicking on the hyperlink to Synapse's Program and Delivery Details sends the customer to Synapse's Program Details webpage, which contains both the customer's assent to the Terms of Use by use of the MagsforMiles website and the forum-selection clause governing any disputes. *Id*., ¶ 8; **Ex. B** at 10.

In *Nguyen*, the Ninth Circuit declined to enforce an arbitration agreement contained in text accessible via a hyperlink located near the checkout button. 763 F.3d at 1179. Here, however, the circumstances differ in several important ways.

First, Plaintiff's claims are entirely premised on the contention that Synapse failed to *deliver* the print publications he ordered and instead substituted delivery of alternative digital titles. Thus, whatever Synapse had to say about the details of publication delivery would obviously have been material to Plaintiff's decision to

enter into a contract with Synapse for the delivery of magazines. His claims, therefore, effectively concede that the specifics of the Synapse "Program and *Delivery* Details" were material to his agreement with Synapse Accordingly, a reasonably prudent consumer in Plaintiff's position would have been motivated to click on a hyperlink entitled "Program and Delivery Details" in order to ensure that he fully understood and appreciated the terms governing the delivery of the magazine titles he had chosen. In contrast, the claims of the plaintiff in *Nguyen* had nothing to do with the details of delivery; rather, claimed injury was the cancellation of his order altogether. *See* 763 F.3d at 1173.

Second, Plaintiff placed orders on *nine* separate occasions in the relevant time frame and encountered the hyperlink to the Program and Delivery Details a minimum of eighteen times in the process of placing those orders. Dart Decl., ¶ 7. In contrast, *Nguyen* a one-time product purchase. *See* 763 F.3d at 1173. A reasonably prudent consumer who considered the specifics of delivery to be material to the transaction was at minimum on constructive notice of the applicable terms where he came across the relevant link no less than eighteen times.

Finally, the defendant in *Nguyen* sought to enforce an arbitration agreement, which is subject to a higher standard than other contractual provisions with respect to manifestation of assent. *See, e.g.*, *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 566 (9th Cir. 2014) ("This principle of knowing consent applies with particular force to provisions for arbitration."). No such heightened standard applies to forum selection clauses, which are "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63.

For these reasons, Plaintiff had at least constructive, if not actual, knowledge of the Program and Delivery Details where he received a notice, with hyperlinks, of the terms of Synapse's MFM program offered, prominently displayed beneath both the "Checkout" and "Place order" buttons used to process his order of the Print

Publications. As such, the Program and Delivery Details were part of the agreement Plaintiff acknowledged and assented to when he placed his orders, and the choice-of-law and forum-selection clauses contained therein bound Plaintiff to litigate this matter in New York courts, under New York law.

**2. Plaintiff Admits That He Entered into the Relevant Contract with Synapse**

"Factual assertions in pleadings … are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Here, Plaintiff's FAC affirmatively pleads that he "entered a contract with Defendant, whereby Defendant offered [him] certain magazines in print publication format in exchange for a certain amount of Miles from Plaintiff." FAC, ¶ 78. Plaintiff complains that he did not receive the publication delivery to which he was entitled. *Id.*, ¶ 80. In so complaining, he concedes that the specific details of the publication delivery were material to his transaction with Synapse. Those delivery details are set out in the Program and Delivery Details. Plaintiff, therefore, effectively admits that the Program and Delivery Details are part of a valid contract between himself and Synapse. As a corollary to this admission, the forum-selection clause in the Program and Delivery Details is enforceable.

**3. The Forum-Selection Clause Is Reasonable**

A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The "unreasonableness" exception to enforcement of a forum-selection clause is narrowly construed. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996) (holding forum-selection clause not unreasonable and therefore enforceable). A forum-selection clause is only unreasonable: "(1) if the inclusion of the clause in

the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.”); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir.1998) (quoting *M/S Bremen*, 407 U.S. at 12-18) (internal quotations omitted). Plaintiff cannot show that any these factors are present in this case.

**a) The forum-selection clause is not the result of fraud or overreaching**

Plaintiff has no basis to assert that his consent to the forum-selection clause itself is the result of fraud or overreaching. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 n.14 (1974); *Mazzola v. Roomster Corp.*, No. 10-CV-5954-AHM-JCGX, 2010 WL 4916610, at *2 (C.D. Cal. Nov. 30, 2010). To demonstrate fraud, “Plaintiff must prove that the forum selection clause itself—not the Agreement as a whole—is the product of fraud or overreaching.” *Id.* (citing *Scherk*, 417 U.S. at 519 n.14). “[S]imply alleging that one was duped into signing the contract is not enough.” *Richards*, 135 F.3d at 1297.

Plaintiff's FAC makes no allegation that the forum-selection clause itself is the product of fraud or overreaching, nor can it. When he ordered the subscriptions to the Print Publications online, Plaintiff was provided with hyperlinks to the Program and Delivery Details immediately below the buttons prompting him to “Checkout” and “Place order.” *See* Dart Decl., ¶ 6; **Ex. C** at 2-3. Clicking on the hyperlink displayed the Program and Delivery Details in their entirety, including the Governing Law and Jurisdiction section containing the forum-selection clause. *Id.*, **Ex. C** at 10.

Nor can Plaintiff avoid the forum-selection clause by claiming he had no opportunity to negotiate it. *See, e.g., Carnival Cruise Lines, Inc.*, 499 U.S. at 593

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

8:23-CV-00198-CJC-JDE - 13 - MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE

("[A] nonnegotiated forum-selection clause in a form ticket contract [is not invalid] simply because it is not the subject of bargaining."); *Bennett v. Hosting.com, Inc.*, No. C-08-3792 SC, 2008 WL 4951020, at *2 (N.D. Cal. Nov. 18, 2008) ("Under federal law, neither a power differential between the parties nor the non-negotiability of the contract is a sufficient reason to set aside the forum selection clause.") (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2004)).

Accordingly, there are no grounds to invalidate the forum-selection clause as the product of fraud or overreaching.

**b) The forum-selection clause does not deny Plaintiff an effective forum**

Plaintiff cannot demonstrate that the forum-selection clause in the parties' contract would deny him an effective forum for his claims. The contractual forum is the "state and federal courts located in New York County, New York." Dart Decl., ¶ 9; **Ex. C** at 10. A federal court in the Southern District of New York is fully capable of hearing and adjudicating Plaintiff's case. Indeed, Plaintiff brings his breach of contract claim on behalf of a putative nationwide class encompassing consumers residing in New York, among other states.

In any event, parties to a forum-selection clause "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *See Atl. Marine*, 571 U.S. at 64. Accordingly, any inconvenience Plaintiff might claim from litigating this case in New York is simply not relevant here.

**c) Enforcing the forum-selection clause would not violate public policy**

Enforcing the forum-selection clause in the parties' contract would not violate the public policy of California. To the contrary, "strong public policy [in California] supports the enforcement of forum selection clauses." *E. & J. Gallo*

*Winery v. Andina Licores S.A.*, 440 F. Supp. 2d 1115, 1126 (E.D. Cal. 2006); *see also Meras Engineering, Inc. v. CH2O, Inc.*, No. 11-cv-0389, 2013 WL 146341, at *11 (N.D. Cal. Jan. 14, 2013) ("California law, like federal law, generally favors the enforcement of forum selection clauses.").

Because Plaintiff cannot demonstrate that the forum-selection clause is unreasonable under any of the factors articulated by the Supreme Court, the clause is valid and enforceable, and the case should be transferred to the Southern District of New York.

#### 4. The Forum-Selection Clause Applies to Plaintiff's Claims

Once the Court determines that a valid forum-selection clause exists, it must consider whether the dispute at issue falls within the scope of the clause. *Moretti v. Hertz Corp.*, No. 13-cv-02972-JSW, 2014 WL 1410432, at *3 (N.D. Cal. Apr. 11, 2014). "[T]he scope ... of a forum selection clause is a matter of contract." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982).

Here, the parties' contract provides that "[a]ny disputes arising under these Program Details and Terms of Use [are subject to] the exclusive jurisdiction of the state and federal courts located in New York County, New York for any such purposes." Dart Decl., ¶ 9; **Ex. C** at 10. Plaintiff's allegations demonstrate that this dispute falls within the scope of this broadly worded forum-selection clause.

The Program Details' Vendor Information provision states that "[t]he vendor and its partners reserve the right at any time and without notice to limit, refuse, cancel, modify, restrict, or terminate orders." Dart Decl., **Ex. B** at 10. Plaintiff's breach of contract claim, which directly challenges Synapse's contractual right to terminate print publication of the magazines he ordered and offer him digital publication alternatives, plainly falls within the scope the forum-selection clause. Because Plaintiff's CLRA, UCL, FAL, and unjust enrichment claims arise from the same factual allegations as his breach of contract claim, they, too, fall squarely

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

8:23-CV-00198-CJC-JDE

- 15 -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO TRANSFER VENUE

within the scope of "any disputes" arising under the Program Details. *See, e.g.*, *Moretti*, 2014 WL 1410432, at *3 (holding that claims for false advertising and fraud related to rental cars fell within forum-selection clause governing disputes arising or relating to terms of service).

**C. Public-Interest Factors Favor Enforcement**

Once the validity and applicability of a forum-selection clause are established, *Atlantic Marine* dictates that the usual analysis involving balancing of plaintiff's choice of forum and other private interests should be disregarded, and that "a district court may consider arguments about public-interest factors only." 571 U.S. at 63-64; *In re CytRx Corp.*, 2015 WL 9871275, at *2 ("If the forum-selection clause is valid, we determine only whether the *forum non conveniens* public-interest factors militate against its enforcement.") (citing *Atl. Marine*, 571 U.S. at 63-65). These factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62, n. 6 (internal quotations omitted). "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id*. at 64. As the party challenging enforcement of the forum-selection clause, Plaintiff "must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id*. at 67.

There are no plausible public-interest factors here that would preclude transfer to New York. For one, there are no greater administrative difficulties flowing from court congestion in the Southern District of New York than in the Central District of California. *See, e.g.*, *In re CytRx Corp.*, 2015 WL 9871275, at *6 (granting motion to transfer where, *inter alia*, the parties "do not argue that either this court or the Delaware Court of Chancery faces administrative difficulties in

handling this case or that one court would try the case faster than the other"); *Gates v. Learjet Corp. v. Jensen,* 743 F.2d 1325, 1337 (9th Cir.1984) (regarding administrative difficulties, "the real issue is ... whether a trial may be speedier in another court because of its less crowded docket").

Nor is there a compelling local interest in having this controversy decided "at home." "California has little interest in keeping the litigation in this state to deter future wrongful conduct" where, as here, the defendant corporation is located out of state. *Moretti v. Hertz Corp.*, No. 13-cv-02972-JSW, 2014 WL 1410432, at *3 (N.D. Cal. Apr. 11, 2014) (quoting *Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689,703 (2009)); *cf. Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011) ("[T]he local interest factor weighs in favor of a California forum where a California plaintiff is suing *a California defendant* over conduct that took place in the state.") (emphasis added).

As to the third factor, Plaintiff cannot demonstrate that California has an interest in having the trial of a diversity case in a forum that is "at home with the law" because as explained above, Plaintiff's claims should be adjudicated under New York law due to the choice-of-law provision in the parties' contract. *See, e.g.*, *Int'l Chem. Supplies (ICS), Inc. v. Restoration Energy, LLC,* 2015 WL 4602664, at *3 (E.D.Cal. July 29, 2015) ("The New York state courts are indisputably more 'at home' with New York state law than this Court.").

Accordingly, the forum-selection clause controls, and Plaintiff cannot meet his heavy burden of demonstrating exceptional circumstances warranting denial of Synapse's motion on public-interest grounds. *See Atl. Marine*, 571 U.S. at 63-64.

## IV. CONCLUSION

For the foregoing reasons, Synapse respectfully requests that the Court grant its Motion to Transfer this matter to the United States District Court for the Southern District of New York.

Dated: May 30, 2023

**ARENTFOX SCHIFF LLP**

By: /s/ Sara T. Schneider
John S. Purcell
Sara T. Schneider
Jessica B. Do

Attorneys for Defendant
SYNAPSE GROUP, INC. d/b/a MAGSFORMILES and MAGSFORPOINTS